UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:14-cv-491-RJC

| | |
|---|---|
| **KRISTI D. SCOTT,** )<br>)<br>**Plaintiff,** )<br>)<br>vs. )<br>) **ORDER**<br>)<br>**CAROLYN W. COLVIN,** )<br>**Acting Commissioner of** )<br>**Social Security Administration,** )<br>)<br>**Defendant.** )<br>_____ ) | |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment and Memorandum in Support, (Doc. Nos. 10, 11); Defendant's Motion for Summary Judgment and Memorandum in Support, (Doc. Nos. 12, 13); Plaintiff's Supplemental Memorandum, (Doc. No. 16); and Defendant's Response in Opposition to the Supplemental Memorandum, (Doc. No. 18). This matter is ripe for review.

## I. BACKGROUND

### A. Procedural Background

On January 24, 2011, Plaintiff Kristi D. Scott ("Plaintiff"), filed applications for child disability benefits and supplemental security income, alleging disability beginning May 10, 1994. (Tr. 19, 102, 110, 132). Plaintiff's initial applications and request for reconsideration were both denied. (Tr. 43, 52, 82). Plaintiff subsequently filed a written request for a hearing, which was held on April 29, 2013, before an administrative law judge ("ALJ"). (Tr. 371-420). The hearing was attended by Plaintiff, her attorney, and an impartial vocational expert ("VE"). (Tr. 371-420).

On July 18, 2013, the ALJ entered a Hearing Decision finding that Plaintiff was not disabled within the meaning of the Social Security Act ("The Act").[1] (Tr. 19-28). Plaintiff filed a request for review by the Appeals Council, which was denied; thus making the ALJ's July 18, 2013, decision final.

Plaintiff timely filed her Complaint seeking judicial review on September 5, 2014. ("Doc. No. 1).

B.     Factual Background

The question before the ALJ was whether Plaintiff was disabled, as defined in the Act, anytime between the alleged onset date of May 10, 1994, through the date of her hearing on April 29, 2013. (Tr. 19). After reviewing all of the evidence, the ALJ concluded that Plaintiff "[had] not been under a disability within the meaning of the Act from May 10, 1994, through the date of this decision." (Id.).

To assess if a claimant is entitled to benefits, the Social Security Administration ("SSA") has promulgated specific regulations that provide for the payment of disabled child's insurance benefits. The regulations hold, in pertinent part, that a claimant must be 18 years or older and must have a disability that began before attaining age 22. 20 C.F.R. § 404.350(a)(5). With regards to the first prong, the ALJ determined that Plaintiff had not attained age 22 as of May 10, 1994, the alleged onset date. (Tr. 21). Therefore, the first requirement for proving Plaintiff is entitled to disabled child's insurance benefits has been met.

---

[1] The Act defines "disability" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a).

2

Next, to determine whether a claimant is disabled, the SSA has established a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). The five steps are:

(1) whether claimant is engaged in substantial gainful activity—if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509—if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1 and meets the duration requirement—if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform his or her past relevant work—if yes, not disabled; and

(5) whether, considering claimant's RFC, age, education, and work experience, he or she can make an adjustment to other work—if yes, not disabled.

See 20 C.F.R. §§ 404.1520(a)(4)(i-v).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability of May 10, 1994. (Tr. 21). At step two, the ALJ found that Plaintiff's multiple sclerosis was a "severe" impairment under 20 C.F.R. §§ 404.1520(c) and 416.920(c). (Tr. 21-22). At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Tr. 22).

Before proceeding to step four, the ALJ determined that Plaintiff had the RFC to perform a range of light work, with the exception that she could not climb ladders and must avoid concentrated exposure to extreme heat and cold. (Tr. 22-26). In comparing this RFC determination

3

to vocational testimony, the ALJ found that Plaintiff was capable of performing past relevant work as a restaurant hostess at step four of the sequential evaluation.[2] (Tr. 26). Alternatively, the ALJ then found that Plaintiff was capable of adjusting to other jobs existing in significant numbers in the national economy. (Tr. 26-27). Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. 27).

## II. STANDARD OF REVIEW

The Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As the Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit noted that "substantial evidence" has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401); see also

---

[2] The ALJ's decision contains a harmless error at step four. Work does not qualify as past relevant work if it is not performed at substantial gainful levels, see 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1), and the ALJ found that Plaintiff had not performed the hostess job at substantial gainful levels. (Tr. 21). Thus, the ALJ should not have found Plaintiff capable of performing past relevant work as a hostess because that job did not qualify as past relevant work. However, the error is harmless because the ALJ provided an alternative step-five finding. (Tr. 26-27).

4

Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . .")

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456; see also Smith v. Schweiker, 795 F.2d at 345; Blalock, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is substantial evidence in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

On appeal to this Court, Plaintiff argues that the ALJ erred as a matter of law in denying her claims on five grounds. Plaintiff addresses her first three arguments in her Motion for Summary Judgment, (Doc. No. 11), contending: (1) the ALJ erred in failing to discuss the reasons for rejecting the treating physician's opinions; (2) the ALJ erred in failing to properly enumerate and explain the credibility findings of Plaintiff's testimony, specifically what portions were and were not credible; and (3) the ALJ erred in failing to consider testimony from family members regarding how Plaintiff's impairment affects her. Additionally, in response to the Fourth Circuit's holdings in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), Plaintiff raises two additional issues in her Supplemental Memorandum. (Doc. No. 16). Plaintiff contends the ALJ erred as a matter of law in denying her claims by (1) failing to assess Plaintiff's ability to perform relevant functions despite contradictory evidence in the record, and (2) using boilerplate language to discuss credibility findings regarding Plaintiff's testimony.

5

A. <u>The ALJ did not err in weighing the treating physician's opinion.</u>

Plaintiff contends that the ALJ erred by failing to properly weigh the testimony of her treating physician, neurologist Dr. Douglas Jeffery, who has been treating Plaintiff since 1999. (Tr. 22). On this ground, Plaintiff asserts that the ALJ's decision should be reversed.

When evaluating and weighing medical opinions, an ALJ considers: "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." <u>Johnson v Barnhart</u>, 434 F.3d. 653 (4th Cir. 2005); <u>see also</u> 20 C.F.R. § 404.1527. A treating physician's opinion, however, is not entitled to controlling weight if there is substantial contradictory evidence in the record. <u>Craig v. Chater</u>, 76 F.3d 585, 590 (4th Cir. 1996); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

According to Dr. Jeffery's medical notes, after adjusting Plaintiff's medication in May 2000, Dr. Jeffery declared that Plaintiff was "stable" and had "done very well." (Tr. 24). From 2000 through 2013, Plaintiff made reports of sporadic symptoms such as having a "slightly abnormal gait." (Tr. 24). Otherwise, Plaintiff did not inform Dr. Jeffery of any problems with "numbness, weakness, blurred vision, or double vision." (Tr. 24). During this thirteen year period, Dr. Jeffery's physical examinations of Plaintiff did not reveal significant abnormalities. (Tr. 24). And the results of Plaintiff's neurological examination indicate Plaintiff was "alert and oriented," and her cognition was listed as "well preserved," per Dr. Jeffery. (Tr. 24). According to a follow-up visit in December 2011 with Dr. Jeffery, MRI scans of Plaintiff's brain revealed no changes over a three-year period. (Tr. 24). A little over a year later in March 2013, Dr. Jeffery again noted that Plaintiff was doing "well;" however, he noted that Plaintiff had problems with balance and fatigue, but did not require treatment for the fatigue. (Tr. 25). Dr. Jeffery's reports also indicate

that Plaintiff's physical, neurological, visual, and motor examinations remained unchanged. (Tr. 25).

In evaluating and weighing the evidence, the ALJ gave little weight to Dr. Jeffery's March 2013 medical statements due to several inconsistencies in the record. (Tr. 25). The ALJ specifically points to conflicting testimony from the Plaintiff, as well as conflicts within Dr. Jeffery's own reports. Dr. Jeffery's March 2013 medical statements have check marks indicating that Plaintiff has "significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination" and an "inability to ambulate effectively, e.g. inability to walk enough to shop or bank, or inability to climb a few steps at a reasonable pace with the use of a single handrail." (Tr. 25). This report directly conflicts with previous reports from Dr. Jeffery indicating that Plaintiff's gait was only "slightly" abnormal and that Plaintiff could run, although "clumsily." (Tr. 24-25). It also contradicts Plaintiff's testimony that she can walk up the steps with the use of a handrail. (Tr. 23, 25). The ALJ further notes that none of Dr. Jeffery's previous reports indicate that Plaintiff required an assistive device for ambulation. (Tr. 25).

According to the ALJ's findings, Dr. Jeffery's March 2013 report also indicates that Plaintiff can only work for two hours per day and can only lift a maximum of five pounds. The ALJ, however, again found that these statements directly conflict with Plaintiff's own testimony that she (1) "had been working for three and a half hours a day and 20 hours per week," and (2) could lift up to 10 pounds. (Tr. 26). Moreover, the ALJ refers to Dr. Jeffery's medical notes and the fact that over a thirteen-year period, they indicate, consistently, that Plaintiff's physical, neurological, and motor examinations have been within a normal range. (Tr. 25).

7

The ALJ specifically considered the reports of Dr. Jeffery, but found them to be deserving of less weight due to the referenced inconsistencies coupled with Dr. Jeffrey's findings over a thirteen-year period of Plaintiff's status as 'stable" and "doing well," which are unsupportive of a finding of disability. (Tr. 25).

The Court finds that the ALJ's decision to give the treating physician's opinion less weight is clearly articulated in the Hearing Decision and substantially supported by the evidence, particularly as to the ALJ's numerous findings of inconsistency within Dr. Jeffery's opinions as compared to the record. Thus, Plaintiff's argument that the ALJ failed to properly weigh and provide reasoning for giving a treating physician's opinion less weight is without merit.

B.   The ALJ's credibility findings are sufficiently explained and supported.

It is not this Court's role to assess the credibility of Plaintiff's testimony, but to assess whether the ALJ applied the correct legal standard in evaluating Plaintiff's credibility and whether the ALJ's decision is supported by substantial evidence. Craig, 76 F.3d at 589.

The ALJ applies a two-step process to determine whether a person is disabled due to pain or other symptoms. Id. at 594. "First, there must be objective medical evidence showing the existence of a medical impairment which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Id., (citing 20 C.F.R. §§ 416.929(b), 404.1529(b)). If found, the ALJ's next step is to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." Id. at 595.

The ALJ must consider all available evidence, such as claimant's medical history, medical signs and laboratory findings, other objective medical evidence, and testimony from claimant, physicians, or others regarding the pain and symptoms. 20 C.F.R. § 404.1529(c)(1)(2); Craig, 76

F.3d at 595. Furthermore, "[t]his evaluation requires the ALJ to determine the degree to which the claimant's statements regarding symptoms and their functional effects can be believed and accepted as true; thus, the ALJ must consider conflicts between the claimant's statements and the rest of the evidence." Aytch v. Astrue, 686 F. Supp. 2d 590, 604 (E.D.N.C. 2010). Additionally, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of claimant's pain and symptoms; (3) factors predicating or aggravating claimant's pain and symptoms; (4) the type, dosage, effectiveness, and side effects of any medication claimant takes to alleviate the pain or symptoms; (5) any treatment other than medication that claimant receives to alleviate the pain or symptoms; (6) any additional measure that claimant uses to relieve the pain or symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions resulting from the pain or symptoms. 20 C.F.R. § 404.1529(c)(3); see also Aytch, 686 F. Supp. 2d at 605.

The ALJ's decision need not address every listed factor, but must provide "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

Here, the ALJ began by first evaluating and determining that Plaintiff's "medically determinable impairment could reasonably be expected to cause [her] alleged symptoms." (Tr. 24). The ALJ then proceeded to the second step, determining that Plaintiff's testimony in regards to her "intensity, persistence and limiting effects of these symptoms" lacked credibility. (Tr. 24). The ALJ explains his findings by evaluating the July 2011 medical records from Plaintiff's primary care physician. (Tr. 25). During this examination, Plaintiff denied fatigue, shortness of breath, and

muscle joint problems. (Tr. 25). However, portions of this denial conflict with Plaintiff's testimony wherein she complains of fatigue, muscle soreness, and weakness. (Tr. 23).

The ALJ then evaluated Plaintiff's testimony as to the intensity, persistence, and limiting effects of Plaintiff's symptoms and determined that Plaintiff "engages in numerous activities of daily living and is predominantly self-sufficient." (Tr. 25). In making this finding, the ALJ references Plaintiff's statements that she: (1) lived on her own during college; (2) carried a heavy book bag; (3) earned a degree in physical education while participating in weight training and exercises classes; (4) worked a part-time job for almost two years; and (5) uses her computer to look for jobs. (Tr. 25). The ALJ specifically stated that the "totality of the objective and subjective evidence of record does not support a finding of disability," as evidenced by Plaintiff's own belief that she is capable of working. (Tr. 25).

This Court finds that the ALJ's finding is substantially supported by the record. Furthermore, the ALJ provided more than a conclusory statement as to why Plaintiff's statements lack credibility regarding the intensity, persistence, and limiting effects of her symptoms.

C.  Failure to review third-party statements is no more than harmless error.

An ALJ "should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Dyrda v. Colvin, 47 F. Supp. 3d 318, 326 (M.D.N.C. 2014) (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)). However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." Dryda, 47 F. Supp. 3d at 326 (quoting Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014)). Moreover, the Fourth Circuit considers failure of an ALJ to consider some evidence to be harmless error, unless the claimant was prejudiced. Dryda, 47 F. Supp. 3d at 326.

Here, the ALJ did consider the testimony of Plaintiff's mother, Ella Scott ("Ms. Scott"), as evidenced by the summary of Ms. Scott's testimony in the Hearing Decision. (Tr. 24). The ALJ did not, however, indicate how much, if any, weight was given to Ms. Scott's testimony, nor did the ALJ discuss Plaintiff's sister's testimony. Nonetheless, Ms. Scott's testimony appears to simply corroborate Plaintiff's testimony, which the ALJ indicated that he carefully considered. (Tr. 24). Despite Plaintiff's argument that the ALJ's failure to weigh the testimony of her sister and mother, Plaintiff fails to establish how the ALJ's action has prejudiced her and would have resulted in a different outcome. The ALJ is not required to "refer to every piece of evidence in his decision." Dryda 47 F. Supp. 3d at 326. Thus, this Court finds that Plaintiff's argument lacks merit, particularly in light of Plaintiff's own testimony as to her capabilities.

D. Mascio is not applicable.

The Court requested supplemental briefing regarding the Fourth Circuit's holdings in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), and whether the holdings are applicable to the instant case. As a result, Plaintiff argues: (1) the ALJ failed to sufficiently address her capacity to perform relevant functions despite contradictory evidence in the record; and (2) failed to appropriately address her credibility before determining the RFC using boilerplate language. (Doc. No. 16).

Mascio requires remand whenever: (1) the ALJ fails to conduct a function-by-function analysis in assessing the claimant's RFC; (2) the ALJ fails to explain the reason for excluding any limitation for concentration, persistence, or pace in the hypothetical to the vocational expert; or (3) the ALJ determines the claimant's RFC before assessing her credibility. 780 F.3d at 636-641. For the reasons given below, the Court finds that Mascio does not apply in this case.

11

First, Plaintiff, in her Supplemental Brief, (Doc. No. 16), argues that the ALJ failed to assess her capacity to perform relevant functions. More specifically, Plaintiff contends the ALJ's decision fails to address conflicting medical opinions and contains unsupported restrictions. This argument, however, is without merit under Mascio as the Fourth Circuit specifically stated that "remand may be appropriate…where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record." Mascio, 780 F.3d at 632. Plaintiff is not arguing that the ALJ failed to conduct a function-by-function analysis, but that the analysis does not provide sufficient detail as to why the ALJ gave significant weight to one physician over another, which is incorrectly challenged under Mascio.

Next, Plaintiff challenges additional restrictions noted by the ALJ, contending that the ALJ's findings are unsupported. Specifically, the ALJ indicates that Plaintiff's ability to perform light work, as recommended by the State's medical consultant, should exclude "climb[ing] ladders" and "concentrated exposure to extreme heat and extreme cold." (Tr. 25). Contrary to Plaintiff's argument, the ALJ specifically states that the reason for the first limitation, climbing ladders, is due to Plaintiff's abnormal gait; and the reason for the second limitation, exposure to extreme heat or cold, is because exposure "seems to aggravate [Plaintiff's] symptoms." (Tr.25).

Lastly, the ALJ's credibility finding was proper under Mascio. Pursuant to Mascio, an ALJ's analysis must inform the court of what specific evidence it relied on in assessing the credibility of claimant's claims. Mascio, 780 F.3d at 639-40. As discussed above, the ALJ took into consideration the objective medical evidence as well as several credibility factors such as the frequency and intensity of symptoms, the precipitating aggravating factors, and Plaintiff's daily activities. After reviewing the record, the ALJ gave significant weight to the State's consultant. Again, the ALJ's findings stated that Plaintiff's testimony and that of her treating physician, Dr.

Jeffery, both lacked credibility and conflicted with one another as well as other parts of the record. This determination was correctly made prior to the RFC assessment, and although the ALJ did rely in part on boilerplate language, the ALJ also went into great detail as to the reasons for these credibility findings. Thus this argument fails under Mascio.

**IV. CONCLUSION**

In light of the deferential standard of review applied under the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), the Court finds that there is substantial evidence to support the Commissioner's final decision.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 10), is **DENIED**;

2. Defendant's Motion for Summary Judgment, (Doc. No. 12), is **GRANTED;** and

3. The Clerk of Court is directed to close this case.

Signed: September 21, 2015

Robert J. Conrad, Jr.
United States District Judge